UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – –X

PASSPORT INTERNATIONAL ENTERTAINMENT,  )   Civil Action No.
LLC, a California Limited Liability Company,  )
                                 )
                Plaintiff,  )   **<u>FIRST AMENDED</u>**
                                 )   **<u>COMPLAINT</u>**
      -against-  )
                                   )
HISTORIC FILMS ARCHIVE, LLC, a New York  )
Limited Liability Company  )
                                   )
             Defendant.  )

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – –X

Plaintiff PASSPORT INTERNATIONAL ENTERTAINMENT, LLC

("PASSPORT') by its attorneys Caplan & Ross, LLP and Michael R. Blaha, for its complaint

alleges as follows:

      1.      PASSPORT is a limited liability company organized under the laws of the State

of California with its principal place of business in North Hollywood, California.   PASSPORT

is in the business of producing and distributing programs for television broadcast and home

video, including documentaries featuring famous Hollywood actors and musicians.

      2.      Defendant HISTORIC FILMS ARCHIVE, LLC ("HISTORIC") is a limited

liability company formed under the laws of the state of New York with its principal place of

business in Greenport, New York.  HISTORIC is in the business of licensing stock footage to

third parties.

1

3.      This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1332 in

that there is diversity of citizenship between the parties and the amount in controversy, exclusive

of interest and costs, exceeds the sum of seventy-five thousand ($75,000) dollars.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

4.      On July 25, 2003, Passport International Productions, Inc. ("PIP") signed a "Stock

Footage License Agreement" (the "Agreement") with HISTORIC, whereby HISTORIC licensed

PIP the right to use "KISS Performance Footage," (the "Stock Footage") which consisted of

footage of the musical group KISS at a concert in Roosevelt Stadium in 1976 (the "Roosevelt

Concert"), for use in PASSPORT's home video program, "THE KISS VAULT" (re-named

"KISS: THE LOST CONCERT." before its release to the home video market) (the "Program").

Paragraph 6.B. of the Agreement provides:

> "Licensor warrants only that it has the right to grant this License with respect to the copyright of the Stock Footage and agrees to indemnify and to hold Licensee harmless only to the extent of any third-party claims for infringement of any motion picture copyright or **any other claims of unauthorized use of <u>any</u> rights arising from exploitation of the motion picture footage as expressly authorized herein."** (Emphasis supplied.).

A true and correct copy of the Agreement is attached hereto as Exhibit A and incorporated herein

by reference.

5.      On August 13, 2003, PIP's in-house business affairs executive, Anthony Mercaldi

("Mercaldi), spoke with Kevin Rice ("Rice"), an executive at HISTORIC to confirm just what

rights PIP secured.  Rice informed Mercaldi that as long as the performance was not lip-synched,

PIP did not need any additional clearances to use the footage.   Mercaldi sent Rice a brief fax that

2

same day, confirming that conversation.  A true and correct copy of that August 13, 2003 fax is

attached hereto as Exhibit "B" and incorporated herein by reference.

6.       On September 4, 2003, Mercaldi sent a fax to Rice asking for "any documents

that we [PIP] may provide to our distributor to assure them that PIP has the performance rights

incorporated in the audio-visual work."  That fax, which is attached hereto as Exhibit C and

incorporated herein by reference, stated, in relevant part:

> "Please accept this as a follow-up to our telephone conference of 8/13/03 and my
> confirmation fax to your attention of the same date.  As you may recall, I contacted you
> to verify that the license Passport secured from Historic Films concerning the Kiss
> Performance Footage (to follow for your review) ***included the underlying rights in the
> live performance itself,*** including all musical sound recordings (not including music
> composition rights.)" (emphasis supplied).

Rice called Mercaldi back that same day and assured him that the Agreement conveyed all rights

necessary for PIP to exploit the live performance in the Program.

7.       Mercaldi subsequently sent a fax to Rice including a proposed rider to the

Agreement to clarify its terms (the "Rider").  The Rider states in relevant part:

> "Licensor [HISTORIC] acknowledges that the Stock Footage includes the underlying
> visual images and sound recordings (***including the live musical performances***)
> incorporated into the Stock Footage, excluding any pre-recorded music or vocals that
> may have been synched or lip-synched into the live performance. . ." (Emphasis
> supplied).

HISTORIC's President, Joe Lauro, signed the Rider and faxed it back to PIP on September 9,

2003.  A true and correct copy of the fully executed Rider is attached hereto as Exhibit D and

incorporated herein by reference.

8.       On November 24, 2003, KISS Catalog, Ltd., Gene Klein p/k/a/ Gene Simmons

and Paul Stanley ("KISS") filed a Complaint in the United States District Court of the Central

3

District of California against PIP for trademark infringement, trademark dilution, false

endorsement, misappropriation of name and likeness, violation of California Business and

Professions Code § 17200 and common law unfair competition in connection with the Program

(the "Underlying Action").   All of KISS's Claims for Relief in that initial Complaint in the

Underlying Action arose in whole or in part from PIP's use of the Stock Footage in the Program.

On December 17, 2003, the Court issued a preliminary injunction against PIP's continued

marketing and distribution of the Program ("First Preliminary Injunction"). On January 9, 2004,

KISS filed a First Amended Complaint stating the same six Claims for Relief.

     9.     On January 20, 2004, PIP appealed the Court's Order granting the injunction to

the United States Court of Appeals for the Ninth Circuit.

     10.     On March 15, 2004 KISS filed a Motion for Summary Judgment.   The Court

denied that Motion for Summary Judgment on August 17, 2004.

     11.     On August 31, 2004, KISS filed their Second Amended Complaint which, for the

first time, included a Claim for Relief under 17 U.S.C. § 1101, alleging that the Roosevelt

Concert was filmed without their consent.

     12.     On September 22, 2004, the Ninth Circuit reversed the Court's December 23,

2003 Order and vacated the First Preliminary Injunction.   On October 18, 2004, KISS filed a

Third Amended Complaint ("TAC").   The TAC, for the first time, alleged that KISS owned the

copyright in the Roosevelt Concert Footage as an employer for hire or assignee, and included an

Eighth Claim for Relief for Copyright Infringement.

     13.     KISS filed another Motion for a Preliminary Injunction against PIP's marketing

and distribution of the Program, this time based on PIP's alleged infringement of KISS's

copyright in the Stock Footage, which was granted on November 18, 2004 ("Second Preliminary Injunction"). PIP's appeal of the Second Preliminary Injunction was unsuccessful; the Ninth Circuit affirmed on July 11, 2005.

14.     On or about February 28, 2007, the Court entered a Permanent Injunction against PIP's marketing and distribution of the Program and dismissed the Underlying Action with prejudice, pursuant to the parties' stipulation.

15.     On April 26, 2006, all of PIP's assets, including all existing claims and causes of action, were purchased at a foreclosure auction by Florence Pugliese.

16.     On April 26, 2006, Florence Pugliese assigned and transferred the PIP Assets to PASSPORT.

17.     As of April 26, 2006, all of the claims and causes of action asserted in this Complaint had accrued.

18.     By virtue of the Florence Pugliese foreclosure purchase and assignment, PASSPORT is the successor in interest to all of the claims and causes of actions asserted against HISTORIC in this Complaint.

### FIRST CLAIM FOR RELIEF
(Breach of Written Contract)

19.     PASSPORT hereby realleges and incorporates by reference paragraphs 1 through 18, inclusive, as though fully set forth herein.

5

20.     Pursuant to the Agreement and the Rider, HISTORIC represented and warranted that it had the rights in the Stock Footage which it had licensed to PIP, and that those rights specifically included the "underlying visual images and audio sound recordings (including live musical performances) incorporated into the Stock Footage" (the "Rights").

21.     PASSPORT is informed and believes, and thereupon alleges, that HISTORIC did not own the Rights when it licensed them to PIP.    Accordingly, HISTORIC is in breach of the Agreement.

22.     PIP performed all of its obligations under the Agreement, except to the extent said performance has been excused, frustrated or made impossible by HISTORIC's wrongful conduct.

23.     As a direct and proximate result of Defendant's aforesaid breach of the Agreement, PIP suffered both direct and consequential damages, was forced to incur substantial legal fees and costs in the Underlying Action and suffered significant losses due to its inability to market and distribute the Program.  Accordingly, PASSPORT has been damaged in an amount which will be established according to proof at trial, but in no event less than $1,000,000, plus interest at the maximum rate permissible by law.

### SECOND CLAIM FOR RELIEF
(Express Indemnity)

24.     PASSPORT hereby realleges and incorporates by reference paragraphs 1 through 23, inclusive, as though fully set forth herein.

25.     Pursuant to the Agreement, HISTORIC agreed to indemnify and hold harmless PIP for any third-party claims "of unauthorized use of any rights arising from exploitation of the Stock Footage" ("Claims").  The Underlying Action represents such

Claims. However, although PIP notified HISTORIC of the Claims, HISTORIC has expressly rejected PIP's contention that said claims constitute a breach of HISTORIC's representations and warranties to PIP under the Agreement.

26.     PIP was forced to incur substantial legal fees and costs in the Underlying Action and suffered significant losses due to its inability to market and distribute the Program. Accordingly, PASSPORT is entitled to be expressly indemnified by HISTORIC for the ALL damages PIP suffered, in an amount to be proved at trial, but in no event less than $1,000,000, plus interest at the maximum rate permissible by law.

### THIRD CLAIM FOR RELIEF
(Implied Indemnity)

27.     PASSPORT hereby realleges and incorporates by reference paragraphs 1 through 26, inclusive, as though fully set forth herein.

28.     PASSPORT has been damaged as described herein above based on HISTORIC's breach of the Agreement.    If, for whatever, reason, it is determined that HISTORIC does not have an express contractual obligation to indemnify and hold harmless PASSPORT from all damages arising from the Claims asserted in the Underlying Action due to HISTORIC's breach of its representations and warranties with respect to the Stock Footage, then HISTORIC nevertheless has an implied obligation to indemnify PASSPORT therefore.

29.     PIP was forced to incur substantial legal fees and costs in the Underlying Action and suffered significant losses due to its inability to market and distribute the Program. Accordingly, PASSPORT is entitled to be impliedly indemnified by HISTORIC for ALL damages PIP suffered, in an amount to be proved at trial, but in no event less than $1,000,000, plus interest at the maximum rate permissible by law.

WHEREFORE, PASSPORT prays for relief as follows:

ON THE FIRST, SECOND AND THIRD CLAIMS FOR RELIEF:

1.    Damages according to proof, but no less than $1,000,000;

2.    Interest at the maximum rate permissible by law.

3.    PASSPORT's attorney's fees and costs of suit herein;

4.    For such other relief as the Court deems just and proper.


DATED: October 31, 2007

                              Respectfully Submitted,
                              CAPLAN & ROSS, LLP


                              By: _____
                                    Brian D. Caplan (BC-1713)
                                    Jonathan J. Ross (JR-0581)
                              100 Park Avenue
                              New York, NY 10017
                              Telephone:    (212) 973-2376
                              Fax:          (212) 661-4290

                                    -and-

                              Michael R. Blaha, Esq.
                               (*pro hac vice* Application Pending)
                              Law Offices of Michael R. Blaha
                              2530 Wilshire Boulevard, Third Floor
                              Santa Monica, California  90403
                              Telephone:    (310) 828-4847
                              Fax:          (310) 828-4153

                              Attorneys for Plaintiff,
                              Passport International Entertainment, LLC

# Exhibit A



**211 THIRD STREET, GREENPORT, NEW YORK 11944**

## STOCK FOOTAGE LICENSE AGREEMENT

DATE:          JUNE 26, 2003                    **JOB #: 11948K**

LICENSOR:     **HISTORIC FILMS ARCHIVE, LLC**
ADDRESS:      211 THIRD STREET
              GREENPORT, NEW YORK 11944

LICENSEE:     **PASSPORT PRODUCTIONS**
ADDRESS:      10520 MAGNOLIA BOULEVARD
              NORTH HOLLYWOOD, CALIFORNIA 91601

**1. STOCK FOOTAGE INVOLVED** (hereinafter the "Stock Footage"):
   **KISS PERFORMANCE FOOTAGE**

**2. PRODUCTION IN WHICH STOCK FOOTAGE TO BE USED** (hereinafter the "Production"):  THE KISS VAULT

**3. PERMITTED USAGE OF STOCK FOOTAGE:**

   A. Number of uses permitted:          UNLIMITED

   B. Total length of permitted usage:   UP TO 7 SONGS

   C. Media in which use permitted:      ALL HOME VIDEO

   D. Terms for which use permitted:     IN PERPETUITY

   E. Territories in which use permitted:  WORLDWIDE

   F. Other limitations on permitted uses:  NONE

**4. LICENSE FEE:** Licensee shall pay to Licensor a fee in the sum of **$20,000.00** which shall become due and payable within thirty (30) days of the date of this Agreement, and further agrees that **100%** of said fee shall in all events be payable to Licensor as a cancellation fee whether or not Licensee uses the Stock Footage as contemplated herein in order to compensate Licensor for costs of compiling, copying, researching, etc.

**5. LICENSE GRANTED**: In consideration of payment of the license fee, Licensor hereby grants to Licensee, without warranty except as expressly stated herein, a limited, non-exclusive, non-transferable license to use the Stock Footage, subject to the terms and conditions specified herein, and as follows:

     A. Licensee hereby expressly agrees that the Stock Footage shall be used only for the permitted purposes as set forth in paragraphs 2 and 3, above, and for no other purpose;

     B. Licensee shall not permit the Stock Footage to be made available to or to be used by any other party not expressly contemplated herein at any time or in any manner other than as provided for in this Agreement;

     C. Licensee shall accord Licensor a prominent courtesy credit for the use of the Stock Footage on the title cards of the Production in a manner equal in all respects to any other courtesy credits which licensee may accord to others in the Production;

     D. Licensee agrees, at its sole expense, to promptly return to Licensor all pre-print material, negatives, dupes, fine grain masters, video tape masters, and all other production or physical materials containing the Stock Footage after the completion of editing of the Production;

     E. Licensee shall, at its sole expense, provide to Licensor a VHS or DVD of the completed final version of the Production before Licensee releases the Production for broadcast;

     F. Licensee agrees to pay all laboratory, duplication, transportation and other related costs which may be involved in producing and delivering the Stock Footage, and further agrees to return the original Stock Footage to Licensor within ninety (90) days of the date of this Agreement.

     G. Licensor agrees to withhold its own home video release of the entire program the Footage is being excerpted from, as well as the sublicensing of the entire program to third parties for home video release (Historic Films reel number ME- 130) for one (1) year beginning with the date of this Agreement. This does not include Licensor's ability to license to third parties clips or excerpts taken from ME-130 (the Footage).

**6. LIMITED LICENSE**: With respect to the License granted hereunder, it is expressly understood and acknowledged by Licensee that:

     A. Any rights, title or interest which the Licensor maintains with respect to the Stock Footage are expressly reserved by Licensor, subject only to the limited rights under the license as granted hereunder;

2

B. Licensor warrants only that it has the right to grant this License with respect to the copyright of the Stock Footage and agrees to indemnify and to hold Licensee harmless only to the extent of any third-party claims for infringement of any motion picture copyright or any other claims of unauthorized use of any rights arising from exploitation of the motion picture footage as expressly authorized herein. In the event that such claims are made against Licensee, Licensee must immediately notify Licensor in writing regarding the details of such claims, and permit Licensor, at its sole option and discretion, to assume the responsibility for control and the defense of any litigation, including but not limited to all aspects of settlement, compromise, etc.

**7. LICENSEE'S ACKNOWLEDGMENTS AND INDEMNIFICATION**: Licensee expressly represents and acknowledges that:

A. Licensee's contemplated use of the Stock Footage may require other consents, clearances, releases or licenses from parties other than Licensor, and Licensee hereby agrees to be solely responsible for obtaining all such necessary consents, clearances, releases or licenses and for making all payments required thereunder to any union, guild, actor, writer, composer, musician, producer, director or any other person or entity whose performances have been recorded in or who have performed services in connection with the Stock Footage;

B. Licensee is solely responsible for the matters set forth in subparagraph 7(A), above, and hereby agrees to indemnify and to hold Licensor (and its agents, employees, representatives, affiliates, parent and subsidiary corporations, each and all of them) harmless against any and all actions, claims, costs (including reasonable attorneys' fees), damages, demands and expenses brought against, suffered or incurred by Licensee as the result of any breach or non-observance of any of the obligations set forth in subparagraph 7(A), above;

C. The terms of the indemnification set forth in subparagraph 7(B) above, shall apply to all loss, cost, damage, liability or expense of any kind arising from claims of defamation, commercial disparagement or other actionable wrong committed by Licensee in connection with the Production.

**8. LICENSE TERMINATION**: Upon the expiration of the license period set forth in paragraph 3 above, or upon termination of this Agreement for whatever cause, all of Licensee's rights and entitlements granted hereunder shall immediately cease and the license granted hereunder shall immediately revert to Licensor. The termination of this Agreement for whatever cause shall not cancel or release any indebtedness of the Licensee to the Licensor.

**9. MISCELLANEOUS**:

A. Nothing in this Agreement or in the license conveyed hereunder shall be deemed to constitute a partnership or joint venture between the parties, and neither party

3

shall do or permit any act to be done whereby it may be represented as agent or partner of the other;

B. This Agreement is personal to and for the sole benefit of the Licensee and the Licensee shall not be entitled to assign, transfer, license, sell or dispose in any way of any of its rights, interests or obligations under this Agreement to any third party;

C. No waiver (whether express or implied) by Licensor of any breach by the Licensee of any of its obligations hereunder shall be deemed to constitute a waiver or consent to any subsequent or continuing breach by the Licensee of any such obligations;

D. In the event that Licensee fails to make timely payment of any fee or costs payable to Licensor, Licensor shall have the right without prejudice to any other right or remedy to charge Licensee from the date that payment fell due until payment is paid in full, interest on the outstanding indebtedness to be calculated at the rate of four (4%) per cent per annum above the base rate as stated by Citibank, N.A. for the applicable time compounded at monthly intervals;

E. Licensee expressly acknowledges that its failure to comply with any of the terms and conditions of this Agreement will render this Agreement and the license conveyed thereunder null and void ab initio, and that a breach by Licensee of any of its representations, warranties or undertakings herein will cause Licensor irreparable damage which cannot readily be remedied in monetary damages in an action at law and may, in addition thereto, constitute an infringement of copyright, thereby entitling Licensor to all equitable remedies, costs and attorneys' fees;

F. This Agreement shall be interpreted in accordance with the laws of the State of New York and will be subject to the exclusive jurisdiction of the courts, state and federal, located within the State of New York to which the parties hereby submit in relation to any dispute arising hereunder;

G. This Agreement constitutes the entire understanding of the parties with respect to the subject matter hereof, and any amendments, changes or modifications shall have legal effect and be binding only if made in writing and signed by both parties.

HISTORIC FILMS ARCHIVE, LLC.        PASSPORT PRODUCTIONS

By: _____  7-22-03     By: _____  7/25/03
     Joe Lauro, President    Date        Its Representative    Date

4

# Exhibit B

PASSPORT PRODUCTIONS

## facsimile transmittal

| To: | Kevin | Fax: | 631-477-9800 |
|-----|-------|------|--------------|
| From: | Anthony Mercaldi | Date: | 8/13/2003 |
| Re: | Kiss Performance Footage License | Pages: | 1 |
| CC: | | | |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

Dear Kevin,

This is to confirm our conversation of earlier today concerning the Kiss License wherein you advised me that the license includes the live audio recording of the performance (as long as the performance was not lip synched.)

If you have any questions, please feel free to contact me at 818-760-1500

Thanks for your help.

Anthony Mercaldi

# Exhibit C

Anthony Mercaldi
Passport International Productions
10520 Magnolia Blvd.
North Hollywood, CA
818-613-3035

# facsimile transmittal

| | | | |
|---|---|---|---|
| **To:** | Kevin | **Fax:** | 631-477-9800 |
| **From:** | Anthony Mercaldi | **Date:** | 9/4/2003 |
| **Re:** | Kiss Performance Footage License | **Pages:** | 9 |
| **CC:** | Danny Pugliese, Herb Dorfman, and Howard Balsam | | |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

Dear Kevin:

Please accept this as a follow-up to our telephone conference of 8/13/03 and my confirmation fax to your attention of the same date. As you may recall, I contacted you to verify that the license Passport secured from Historic Films concerning the Kiss Performance Footage (to follow for your review) included the underlying rights in the live performance itself, including all musical sound recordings (not including music composition rights.) This afternoon, we received a fax from our distributor advising us that they do not believe that the license from Historic actually conveys these rights to Passport (correspondence to follow for your review.)

Please contact me at your earliest convenience to discuss this matter in greater detail. If Historic Films is in possession of any documents that we may provide to our distributor to assure them that Passport has the performance rights incorporated in the audio-visual work (the footage), please provide me with copies at your earliest convenience. Passport is operating under a strict deadline

for its Kiss DVD, and relied on the assurances of Historic Films that it possessed the rights

Historic Films represented that it licensed.


I can be reached at 818-760-1500.  Please get back to me at your earliest convenience to clarify

this matter.


Sincerely,

Anthony Mercaldi

# Exhibit D

Rider to "Stock Footage License Agreement"

Licensor acknowledges that the Stock Footage includes the underlying visual images and audio sound recordings (including the live musical performances) incorporated into the Stock Footage, excluding any pre-recorded music or vocals that may have been synched or lip-synched into the live performance, and that Licensor warrants that it has the right to grant a license with respect to the copyright in the Stock Footage as herein further defined. Licensee acknowledges that this grant does not extend to any copyrights in the music compositions of the underlying songs, and that Licensee has the responsibility to obtain any and all synchronization and videogram licenses from the copyright holders of the music composition rights at licensee's own expense.

The above provision is not intended in any way to modify, alter, or change any terms or obligations in the Agreement, but rather to clarify the terms and to more accurately reflect the understanding of Passport and Historic Films.

Dated: September 8, 2003

By: _____
Jeanette Pugliese, VP
Passport International Productions

Dated: September 1, 2003

By: _____
Joe Lauro, President
Historic Films Archive, LLC.

| Post-it® Fax Note | 7671 | Date 9/9/03 | # of pages ▶ 1 |
|---|---|---|---|
| To Anthony Morcaldi | | From Kevin Rice | |
| Co./Dept. | | Co. | |
| Phone # | | Phone # 631 477 9400 | |
| Fax # 818 760 1532 | | Fax # 9800 | |

## CERTIFICATE OF SERVICE

I, Jonathan J. Ross, hereby certify that on October 31, 2007, I caused to be served a true and correct copy of the within First Amended Complaint by ECF filing and First Class Mail upon the following:

> David M. Levy
> Levy & Boonshoft, P.C.
> 477 Madison Avenue, 14th Floor
> New York, New York 10022
> Attorneys for Defendant
> Historic Films Archive, LLC

Dated: October 31, 2007
          New York, New York

Jonathan J. Ross (JR 0581)